785 So.2d 640 (2001)
STATE of Florida, Appellant,
v.
Jeffrey McDONALD, Appellee.
No. 2D00-1179.
District Court of Appeal of Florida, Second District.
May 4, 2001.
*641 Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Kevin Briggs, Assistant Public Defender, Bartow, for Appellee.
ALTENBERND, Acting Chief Judge.
The State of Florida appeals an order dismissing child abuse charges against Jeffrey McDonald. The trial court, bound by the First District's decision in Wilson v. State, 744 So.2d 1237 (Fla. 1st DCA 1999), held that Mr. McDonald's common law parental privilege to use corporal punishment on his child prohibited a charge of "simple" or third-degree felony child abuse. See § 827.03(1), Fla.Stat. (1999). After the trial court rendered its decision, the Fourth District issued its opinion in Raford v. State, 26 Fla. L. Weekly D246, ___ So.2d ___, 2001 WL 40265 (Fla. 4th DCA Jan. 17, 2001), expressly conflicting with the First District's decision in Wilson. We conclude that Wilson does not accurately reflect the current state of the criminal child abuse statutes and, accordingly, reverse the trial court's order of dismissal. After recent amendments to the child abuse statutes, a father's "privilege" to reasonably discipline a child does not bar prosecution for simple child abuse when a beating results in bruising severe enough to require the child's treatment at a hospital. The fact that the injuries are not permanent injuries, but heal after medical treatment, is not a bar to prosecution.
Although the common law's recognition of a father's right to discipline a child "in a *642 reasonable manner"[1] apparently prevented a father's prosecution for simple battery, we are unaware of any "common law privilege" that provides special protection to a parent when charged with the separate, statutory crime of child abuse. Indeed, the statutory crimes of child abuse and cruelty to children appear to have been created by legislatures, in part, to avoid the limitations imposed by the judiciary within the common law. See Kama v. State, 507 So.2d 154, 156-57 (Fla. 1st DCA 1987). The Florida Legislature has prudently continued the common law tradition permitting "reasonable" parental discipline. This tradition, however, is evinced by the elements of the statutory offenses created by the legislature and not by some separate, unwritten privilege created by the judiciary. Our current child abuse statutes do not exempt parents from prosecution for child abuse, but attempt to define the boundary between permissible parental discipline and prohibited child abuse.
In light of recent amendments to chapter 39, Florida Statutes (1999), and chapter 827, we conclude that the legislature has placed some restrictions upon the types of physical punishment that can legitimately be imposed as discipline. Of equal significance, the legislature has modified the penalties for these offenses so that minor abuses of parental discipline can be treated as misdemeanors, more serious problems can be classified as third-degree felonies, and the first-degree felony of aggravated child abuse can be preserved for truly aggravated circumstances.
We reverse the order of dismissal and remand to the trial court for further proceedings. Although our reasoning conflicts with that of the First District in Wilson, we are not convinced that our opinion conflicts with the outcome in Wilson because we are not inclined to believe that the act of discipline in Wilson would constitute simple child abuse under the analysis applied in this opinion. Accordingly, we decline to certify conflict at this time.

I. THE ALLEGATIONS AGAINST MR. McDONALD
On August 11, 1999, Mr. McDonald allegedly spanked his six-year-old daughter.[2] There were no eyewitnesses to the event other than the child and Mr. McDonald. The child sustained dark bruising covering both of her buttocks. She received medical attention at a hospital. Someone took photographs of the child's injuries, which the trial judge described as depicting bruises to the child's buttocks, as *643 well as to the child's upper thigh and upper back.[3] Thus, the conduct involved in this criminal case is not alleged to be a typical spanking by a parent who believes in the value of such corporal punishment. The State takes the position that the father inflicted an unjustifiable beating that resulted in temporary rather than permanent physical injuries to the child.
The motive or explanation for this beating is unclear. The State asserted that the child had not wiped herself or flushed the toilet after she went to the bathroom, and that this had angered Mr. McDonald. The defense argued that the punishment was in response to the child getting into a medicine cabinet, into the father's girlfriend's cigarettes, and pushing her brother.

II. THE PROCEEDINGS BELOW
The State charged Mr. McDonald with a violation of section 827.03(1). That statute provides, in pertinent part:
(1) "Child abuse" means:
(a) Intentional infliction of physical or mental injury upon a child;
(b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.
Mr. McDonald moved to dismiss the information, arguing that as a parent employing corporal punishment on his child he was exempt from prosecution for this crime. See Wilson, 744 So.2d 1237.
At a hearing on the motion, the State conceded that the evidence did not justify charging Mr. McDonald with aggravated child abuse pursuant to section 827.03(2), which provides:
(2) "Aggravated child abuse" occurs when a person:
(a) Commits aggravated battery on a child;
(b) Willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or
(c) Knowingly or willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child.
In essence, the State maintains that Mr. McDonald exceeded the bounds of permissible discipline by using excessive force, but that his conduct was more the result of a loss of temper than a matter of willful malice. While a few state attorneys in the past may have succumbed to the temptation to charge similar conduct as "malicious punishment," this state attorney was more circumspect in charging such as a first-degree felony.
In the trial court, Mr. McDonald argued that he was exempt from the crime of "simple" child abuse so long as he was disciplining his child, irrespective of the motive. The trial court adopted the view presented by Mr. McDonald, expressing its opinion that the First District's opinion in Wilson required the dismissal of the charge. Although the mother's single, open-handed slap of her son's face that resulted in bruising in Wilson is arguably less culpable than the beating that occurred in this case, the trial court reasonably interpreted Wilson to hold that a parent is not criminally responsible for child abuse occurring in the discipline of a *644 child unless the level of conduct meets the parameters of aggravated child abuse.

III. KAMA AND ITS PROGENY
The legal analysis of this case begins with a consideration of the First District's opinion of Kama, 507 So.2d 154. In Kama, the appellant was charged and convicted of aggravated child abuse by way of malicious punishment in violation of section 827.03(3), Florida Statutes (1985), for his conduct in disciplining his stepson. Witnesses to the abuse testified that the stepson was kicked, punched, and spanked. The child's injuries, however, consisted mainly of severe bruising. Mr. Kama appealed his conviction, alleging that he was entitled to a jury instruction on the lesser-included offenses of "simple" child abuse, at that time a misdemeanor, and simple battery. The First District, over the strong dissent of Judge Erwin, disagreed.
The Kama court recognized the "well established principle that a parent, or one acting in loco parentis, does not commit a crime by inflicting corporal punishment on a child subject to his authority, if he remains within the legal limit of that authority." 507 So.2d at 156. Thus, the court held:
The determination that a parent, or one standing in the position of a parent, has overstepped the bounds of permissible conduct in the discipline of a child presupposes either that the punishment was motivated by malice, and not by an educational purpose; that it was inflicted upon frivolous pretenses; that it was excessive, cruel or merciless; or that it has resulted in "great bodily harm, permanent disability, or permanent disfigurement."
507 So.2d at 155 (emphasis added). The Kama court then examined the legislative history involving child abuse. It concluded that the statutory scheme then existing in sections 827.03 and 827.04, Florida Statutes (1985), which separated the crime of aggravated child abuse from "simple" child abuse and defined "simple" child abuse in terms of "permitting" injury to a child, indicated a legislative intent to draw a clear line between acceptable discipline and criminal conduct. According to Kama, that clear line provided that a punishing parent "crossed the line" only when the parent's conduct rose to the level of aggravated child abuse. Therefore, the court concluded that the law permitted a parent, by privilege, to commit a simple battery or "simple" child abuse, and a parent doing so could not be charged with those crimes. Under this rationale, a parent crossing that line would be charged with aggravated child abuse and could not claim the benefit of a jury instruction on the lesser-included offense of simple child abuse. Many subsequent cases citing Kama did so in this same contextto affirm a conviction for aggravated child abuse for instances of severe abuse, even if the trial court did not instruct the jury on any lesser-included offenses. See State v. Coffman, 746 So.2d 471 (Fla. 2d DCA 1998); Lowery v. State, 641 So.2d 489 (Fla. 5th DCA 1994); Mohammed v. State, 561 So.2d 384 (Fla. 1st DCA 1990).
Kama and its progeny created a two-edged sword. On the one hand, a parent had a common law defense to the crime of child abuse that safeguarded the parent from prosecution for most forms of corporal punishment. On the other hand, if the parent crossed the line from privileged conduct to criminal act, the offense jumped all the way to a second-degree felony. See Herbert v. State, 526 So.2d 709 (Fla. 4th DCA 1988). In Herbert, a mother inflicted punishment similar to that alleged in this case when she punished her seven-year-old son for stealing money from her by hitting him with a belt, leaving bruising on his shoulders, back, and arms. She was charged with and convicted of aggravated *645 child abuse. The Fourth District noted that the circumstances were "tragic," and that most cases upholding aggravated child abuse convictions involved far more egregious behavior and injuries. Nevertheless, after a discussion of the principles espoused in Kama, the court found the evidence sufficient to support a finding of malicious punishment and therefore a conviction for aggravated child abuse. But see Moakley v. State, 547 So.2d 1246 (Fla. 5th DCA 1989) (holding evidence that appellant spanked his eight-year-old daughter with leather belt causing bruising to buttocks and right hip not sufficient to support jury verdict for aggravated child abuse by malicious punishment). See also A.J. v. State, 721 So.2d 761 (Fla. 2d DCA 1998) (overturning trial court's ruling that juvenile could be adjudicated delinquent for crime of misdemeanor child abuse when evidence did not support charge of aggravated child abuse); Ellis v. State, 714 So.2d 1160 (Fla. 2d DCA 1998) (reducing convictions for aggravated child abuse to permissive lesser-included offense of child abuse where conduct alleged was failure to feed or seek medical treatment).
Each of the cases cited above, however, involved offenses committed when the same or substantially the same statutory scheme interpreted in Kama existed. That statutory scheme changed significantly, beginning in 1996. It appears that the legislature prudently decided to dull the edge of Kama's two-edged sword. The statutory amendments allow some forms of "excessive" or "cruel" punishment, which might have constituted major felonies under Kama, to be classified as misdemeanors or minor felonies.

IV. STATUTORY CHANGES AFTER KAMA

When Kama was decided, three statutory sections addressed the crimes for abuse or neglect of children: section 827.03 addressed the second-degree felony of aggravated child abuse; section 827.04 addressed three levels of child abuse constituting either a third-degree felony or a first-degree misdemeanor; and section 827.05 addressed negligent treatment of children, a second-degree misdemeanor. After Kama, both chapter 827 and chapter 39 were extensively amended. See chs. 96-322, 98-403, Laws of Fla. Whatever legislative intent Kama could glean from the statutory scheme in 1985 has been substantially altered by these revisions.
In chapter 96-322, section 8, Laws of Florida, section 827.03 was rewritten to include three subsections: the first addressed child abuse, the second addressed aggravated child abuse, and the third addressed neglect of a child. The definition of child abuse, which previously discussed a person "permitting" injury, was substantially rewritten in the amended section 827.03(1). "Simple" child abuse was enhanced to become a third-degree felony, and aggravated child abuse became a first-degree felony. Nothing in the language of this statute now appears to exempt parents from prosecution.
The legislature's intent is perhaps more strongly reflected in other amendments. In chapter 96-322, section 10, Laws of Florida, section 827.04 was rewritten to describe the crime of contributing to the "dependency" of a child, a first-degree misdemeanor.[4] This amendment was followed in 1998 by an amendment to chapter 39 that designates certain types of excessive corporal punishment as civil child abuse. Ch. 98-403, § 20, Laws of Fla. The definition of "abuse" in section 39.01(2) was amended to read:

*646 "Abuse" means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions. Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.
Ch. 98-403, § 20, Laws of Fla. See also § 984.03(2), Fla.Stat. (1999) (providing a similar, though not exact, definition). At the same time, section 39.01(30) was added to define harm, in pertinent part, as:
"Harm" to a child's health or welfare can occur when any person:
(a) Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury. In determining whether harm has occurred, the following factors must be considered in evaluating any physical, mental, or emotional injury to a child: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. Such injury includes, but is not limited to:
. . . .
4. Inappropriate or excessively harsh disciplinary action that is likely to result in physical injury, mental injury as defined in this section, or emotional injury. The significance of any injury must be evaluated in light of the following factors: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. Corporal discipline may be considered excessive or abusive when it results in any of the following or other similar injuries:
. . . .
k. Significant bruises or welts.
Ch. 98-403, § 20, Laws of Fla. Thus, after 1998, a parent who spanked a child with such force or repetition as to cause significant bruises or welts could be considered to have abused the child under chapter 39. Even if the Department of Children and Families did not initiate a dependency proceeding, the State could charge the parent with contributing to the dependency of a minor for such conduct. See State v. Fuchs, 751 So.2d 603 (Fla. 5th DCA 1999) (upholding constitutionality of statute in case in which mother was charged).
We conclude that if a parent can be charged with the misdemeanor offense under section 827.04 when a spanking results in significant welts, the legislature intended more serious beatings that do not result in permanent disability or permanent disfigurement to be treated as simple child abuse under section 827.03(1). This reserves aggravated child abuse to cases involving parental discipline that results in great bodily harm or permanent disabilities and disfigurements or that demonstrates actual malice on the part of the parent and not merely a momentary anger or frustration.

V. APPLICATION OF THE CURRENT CHILD ABUSE STATUTES
Since these statutory changes occurred, one district has continued to follow the reasoning in Kama. In Wilson, 744 So.2d 1237, the First District upheld a trial court's determination that a mother's single, open-handed slap of her son's face during a tantrum did not support a charge of aggravated child abuse, but reversed the trial court's finding that the mother could face charges for "simple" child abuse. Although the Wilson court acknowledged the statutory changes, it found they did not affect the extent of the privilege *647 recognized in Kama. See also Nixon v. State, 773 So.2d 1213 (Fla. 1st DCA 2000) (recognizing the parental privilege espoused in Kama and Wilson as an affirmative defense).
We disagree. To the extent Kama relied upon legislative intent, as explained in the preceding section, the legislative intent has changed. To the extent it relied upon any common law privilege for corporal punishment, that privilege is itself now defined and limited by the current statutory scheme. Pursuant to that scheme, a parent can be charged with simple child abuse for excessive corporal punishment that falls between the level of abuse required to establish the offense in section 827.04 and that required to prove a violation of section 827.03(2). Thus we agree with the Fourth District's opinion in Raford v. State, 26 Fla. L. Weekly D246, ___ So.2d ___, 2001 WL 40265 (Fla. 4th DCA Jan. 17, 2001), to the extent that Raford held that Kama has been overruled by statute.[5]
In reversing this case, we recognize that drawing a line between prohibited child abuse and permissible corporal punishment, administered by parents who believe in this form of discipline, is not an easy task. In a state where the common law of crime has been supplanted in large part by statutory law, see State v. Adams, 683 So.2d 517 (Fla. 2d DCA 1996), section 775.01, Florida Statutes (1999), this difficult task is principally a legislative function. We confess, however, that the present statutory scheme gives us pause in two respects. First, the offense in section 827.03(1) prohibits an intentional act that could reasonably be expected to result in physical or mental injury to a child. Relying exclusively on this language, when the charged conduct involves excessive discipline by a parent, we have difficulty distinguishing between the misdemeanor described in section 827.04 and this third-degree felony.
Second, we are concerned that an offense of contributing to the dependency of a minor, at least if the offense applies to parents, may adversely affect civil dependency proceedings. Under chapter 39, it is often useful to obtain a rapid admission of dependency from the parents and gain their cooperation in order for the dependency proceeding to serve as a method to give immediate help to the family. If the parental act that justifies dependency is also a criminal act, the consequences of such an admission may be more serious. The Department of Children and Families may be compelled to litigate more dependency cases, may find the parents less cooperative, and may be forced to defer assistance to the families if these cases become quasi-criminal proceedings. This policy concern, however, is a matter for the legislature.
The information against Mr. McDonald should not have been dismissed. Whether the corporal punishment of the child in this case was excessive such that it became the crime of child abuse is a question of fact, not capable of resolution at this time.
Accordingly, we reverse and remand for further proceedings.
NORTHCUTT and CASANUEVA, JJ., concur.
NOTES
[1] Blackstone states: "The power of a parent by our English laws is much more moderate; but still sufficient to keep the child in order and obedience. [The father] may lawfully correct his child; being under age, in a reasonable manner; for this is for the benefit of [the child's] education." I William Blackstone, Commentaries *440. Thus, the common law created a standard of reasonableness for parental discipline that reflects current and changing conditions similar to the standard of reasonableness used in common law negligence. This court's own research has not revealed any extensive body of common law prior to July 4, 1775, creating an expansive privilege against prosecution for the parent. See generally Leonard P. Edwards, Corporal Punishment and the Legal System, 36 Santa Clara L.Rev. 983-84 (1996); Scott Bloom, Spare the Rod, Spoil the Child? A Legal Framework for Recent Corporal Punishment Proposals, 25 Golden Gate U.L.Rev. 361, 365 (1996). It appears likely that the common law often left such family issues for resolution by the church and other social institutions and simply did not address excessive discipline as a matter of criminal law.
[2] There is no evidence in this record. The facts described in this opinion are derived from the arresting officer's probable cause affidavit and from the statements of the attorneys at the hearing on the motion to dismiss.
[3] The State proffered these pictures at the hearing, but did not place them into the trial court's record. Because the trial court decided the issue as a matter of law and not as a question of fact dependent upon the severity of the injuries, we can resolve this case without the photographs. However, it is the better practice to file such evidence or copies of such evidence in the trial court record for inclusion in the appellate record.
[4] Section 827.05, Florida Statutes (1985), was repealed. Ch. 96-322, § 11, Laws of Fla.
[5] We do not decide today whether the relationship among sections 827.03(2), .03(1), and.04, Florida Statutes (1999), creates lesser-included offenses.