828 So.2d 1012 (2002)
Willie RAFORD, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-379.
Supreme Court of Florida.
September 26, 2002.
*1013 Carey Haughwout, Public Defender, and Steven H. Malone, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Celia Terenzio, Assistant Attorney General, Bureau Chief, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, FL, for Respondent.
PER CURIAM.
We have for review the opinion in Raford v. State, 792 So.2d 476 (Fla. 4th DCA 2001), which certified conflict with Wilson v. State, 744 So.2d 1237 (Fla. 1st DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons set forth below, we approve the Fourth District's decision affirming Raford's conviction for child abuse and rejecting his claim of parental privilege and immunity as to the abuse charged and tried.

PROCEEDINGS TO DATE
Petitioner, Willie Raford, was charged with committing aggravated child abuse on his girlfriend's eight-year-old child by repeatedly striking the child with a belt. Section 827.03(2), Florida Statutes (1997), provides:
(2) "Aggravated child abuse" occurs when a person:
(a) Commits aggravated battery on a child;
(b) Willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or
(c) Knowingly or willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child.
A person who commits aggravated child abuse commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 827.03(2), Fla. Stat. (1997).[1] At the jury instruction conference during Raford's trial, the trial court decided, over defense counsel's objection, to instruct the jury on *1014 the lesser included offense of child abuse, a third-degree felony.[2]
During jury deliberations, the trial court realized that it had mistakenly instructed the jury on second-degree aggravated child abuse found in section 827.03(2)(c), rather than the lesser included felony child abuse the court intended to address.[3] After discussion with defense counsel and the State, the trial court proposed a solution to the error by offering to sentence petitioner as if he had been convicted of the intended lesser included offense of child abuse, a third-degree felony, if the jury should return a verdict finding him guilty of the second-degree felony actually instructed upon. Defense counsel responded to the offer by asserting, "I would have a hard time saying I was prejudiced by that one." The jury subsequently did find petitioner guilty of the lesser included second-degree felony charged upon, and the trial court, as it had earlier agreed, then adjudicated and sentenced petitioner for the lesser included offense of third-degree felony child abuse.
On appeal, the Fourth District rejected Raford's contention that the trial court erred in giving a lesser included instruction because there were no lesser included offenses that applied to the charge of aggravated child abuse brought against him, as well as his related argument that his conviction should be set aside because he had a common-law parental privilege to discipline the child as he did. See Raford, 792 So.2d at 479-80. The district court acknowledged that its decision conflicted with Kama v. State, 507 So.2d 154 (Fla. 1st DCA 1987), and Wilson v. State, 744 So.2d 1237 (Fla. 1st DCA 1999), wherein the First District held that there are no lesser included offenses that apply to a parent, or one acting as such, charged with aggravated child abuse.
In its opinion, the court explained that Raford's argument and the Wilson decision overlooked the fact that shortly after Kama was decided the Legislature amended the statutory scheme for third-degree felony and misdemeanor child abuse, as defined in section 827.04, and clearly provided for lesser included offenses. See id. The district court interpreted the legislative changes as eliminating the parental privilege recognized in Kama under the pre 1988 statutes, except for simple battery, e.g., a typical spanking or other nonconsensual contact. See id. at 480. The district court also found the trial court's erroneous instructions to the jury to have been harmless under the circumstances presented. The court certified conflict with Wilson.[4]Id.

ANALYSIS
Under the conflict of decisions certified, at issue is whether a parent or person standing in loco parentis may be convicted *1015 of the lesser offense of felony child abuse pursuant to section 827.03(1), Florida Statutes.[5]

Kama
In Kama v. State, 507 So.2d 154 (Fla. 1st DCA 1987), Kama was convicted of aggravated child abuse in violation of section 827.03(1)(c), Florida Statutes (1985), for his conduct in disciplining his ten-year-old son. On appeal, Kama argued that the trial court erred in not giving requested jury instructions on the lesser included offenses of misdemeanor child abuse and simple battery. In rejecting Kama's claim, the First District acknowledged the "well established principle that a parent, or one acting in loco parentis, does not commit a crime by inflicting corporal punishment on a child subject to his authority, if he remains within the legal limits of the exercise of that authority." Id. at 156.[6] However, the court concluded that under the then existing statutory scheme, the Legislature intended that "reasonable discipline of children be privileged, but that when the person in authority over a child inflicts punishment greater than that which he is privileged to inflict, he commits a serious offense, aggravated child abuse, not merely a misdemeanor nonconsensual touching." Id. at 157-58. The court explained:
It is because the law permits, by privilege, a simple battery in the administration of discipline by one in authority over a child that the offense of aggravated child abuse must be so defined. Appellant's contention is that there must be some offense less serious than a second degree felony for a battery which exceeds the legal limits of a parent's disciplinary authority. The legislature has not so provided, and such an unconstitutionally ambiguous standard would not provide the means for judging the acceptable boundaries of disciplinary conduct. The offense of battery covers a broad range of conduct, from an intentional "unconsented to" touching, to the intentional infliction of bodily harm.
Id. at 158. The court concluded that the trial court had properly ruled that a simple battery was not a lesser included offense of aggravated child abuse. Id. at 159.[7] *1016 The First District similarly concluded that the trial court had properly determined that misdemeanor child abuse was also not a lesser included offense of aggravated child abuse under the prevailing facts. The court reasoned:
Section 827.04(2), is violated when a person allows a child to be deprived of necessary food, clothing, shelter, or medical treatment, or through culpable negligence permits physical or mental injury to a child. The uncontroverted evidence in this case is that appellant inflicted injury upon the child, not that he "permitted" injury to the child, as contemplated by section 827.04(2).
Id. Hence, the court indicated that the absence of language prohibiting "infliction" of injury to be critical to its analysis of the abuse statute.

Statutory Amendments After Kama
Shortly after Kama was decided, the Legislature amended third-degree felony and misdemeanor child abuse, as defined in section 827.04, to provide:
(1) Whoever, willfully or by culpable negligence, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment, or who, knowingly or by culpable negligence, inflicts or permits the infliction of physical or mental injury to the child, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to such child, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(2) Whoever, willfully or by culpable negligence, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment, or who, knowingly or by culpable negligence, inflicts or permits the infliction of physical or mental injury to the child, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Ch. 88-151, § 4, at 812, Laws of Fla. (additions are underlined). Thus, as amended, and unlike the situation in Kama, a person who "inflicted" the physical or mental injury to a child could be found guilty of misdemeanor child abuse under section 827.04(2). More recently, in 1996, the Legislature again amended chapter 827, and section 827.03 was rewritten to include three subsections pertaining to child abuse, aggravated child abuse, and neglect of a child, respectively. See ch. 96-322, § 8, at 1770-71, Laws of Fla. As amended, section 827.03 provided in pertinent part:
(1) "Child abuse" means:
(a) Intentional infliction of physical or mental injury upon a child;
(b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.
A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, *1017 punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 827.03(1), Fla. Stat. (Supp.1996). Obviously, the statutory scheme has been significantly amended and expanded since Kama.
Notwithstanding the statutory amendments discussed above, petitioner maintains that the Fourth District erroneously concluded that a parent or one standing in loco parentis may be convicted of felony child abuse. Rather, petitioner argues that the First District correctly held in Wilson that the parental privilege and immunity discussed and recognized in Kama extends to felony child abuse under section 827.03(1).

Wilson
In Wilson, the appellant was charged with aggravated child abuse by malicious punishment under section 827.03(2)(b). In her motion to dismiss, the appellant asserted that the undisputed facts did not establish a prima facie case of either aggravated child abuse or the lesser offense of felony child abuse in light of a parent's privilege to administer corporal punishment. The trial court granted her motion in part, reducing the charge to felony child abuse. The appellant subsequently pled no contest to the latter crime and reserved her right to appeal.
On appeal, the First District reversed the appellant's conviction for felony child abuse, holding that the trial court erred as a matter of law in denying the appellant's motion to dismiss the lesser charge of felony child abuse. See 744 So.2d at 1239-40. The court reasoned:
This new crime of felony child abuse was enacted well after our Kama decision as part of the legislature's 1996 revision and amendment of the criminal child abuse statutes. See Ch. 96-322, Laws of Florida; 827.04(2), Fla. Stat. (1995). [Section 827.03(1)] does not define or refer to the parental privilege of corporal discipline, and we have found no cases that address this felony child abuse offense in interaction with it. By its express terms, however, the statute clearly excludes those actions that constitute aggravated child abuse and includes actions that constitute simple battery. We stated in Kama that a simple battery, which consists of actions ranging from an intentional unconsented to touching to the infliction of bodily harm, occurring in the administration of discipline by one in authority over a child is privileged by law. Kama v. State, 507 So.2d at 158. This privilege thus extends to simple or felony child abuse.
Id. at 1240. Thus, following its analysis in Kama, the court concluded that "where the undisputed facts demonstrate that a parent has employed corporal punishment to discipline his or her minor child, as in the instant case, that parent is exempt from prosecution under the felony child abuse statute." Id.

McDonald
Recently, the Second District in State v. McDonald, 785 So.2d 640 (Fla. 2d DCA 2001), announced its agreement with the Fourth District's conclusion in Raford that the holding in Kama has been overruled by subsequent statutory changes. In McDonald, the defendant was charged with felony child abuse in violation of section 827.03(1) for allegedly spanking his six-year-old daughter in a manner that resulted in bruising to the child's buttocks, upper thigh, and upper back. The defendant moved to dismiss the information, arguing that as a parent employing corporal punishment on his child he was immune from prosecution for simple child abuse. The trial court granted the motion, holding that the decision in Wilson required dismissal of the charge.
*1018 On appeal, the Second District reversed the trial court's order dismissing the felony child abuse charge. In so doing, the Second District noted that whatever legislative intent the Kama court could glean from the statutory scheme in 1985 had since been substantially altered by subsequent legislation. See id. at 645. Analyzing the subsequent statutory changes, the Second District stated:
In chapter 96-322, section 8, Laws of Florida, section 827.03 was rewritten to include three subsections: the first addressed child abuse, the second addressed aggravated child abuse, and the third addressed neglect of a child. The definition of child abuse, which previously discussed a person "permitting" injury, was substantially rewritten in the amended section 827.03(1). "Simple" child abuse was enhanced to become a third-degree felony.... Nothing in the language of this statute now appears to exempt parents from prosecution.

The legislature's intent is perhaps more strongly reflected in other amendments. In chapter 96-322, section 10, Laws of Florida, section 827.04 was rewritten to describe the crime of contributing to the "dependency" of a child, a first-degree misdemeanor. This amendment was followed in 1998 by an amendment to chapter 39 that designates certain types of excessive corporal punishment as civil child abuse. Ch. 98-403, § 20, Laws of Fla. The definition of "abuse" in section 39.01(2) was amended to read:
"Abuse" means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions. Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.

Ch. 98-403, § 20, Laws of Fla.[[8]] See also § 984.03(2), Fla. Stat. (1999) (providing a similar, though not exact, definition). At the same time, section 39.01(30) was added to define harm, in pertinent part, as:
"Harm" to a child's health or welfare can occur when any person:
(a) Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury. In determining whether harm has occurred, the following factors must be considered in evaluating any physical, mental, or emotional injury to a child: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. Such injury includes, but is not limited to:
*1019 ....
4. Inappropriate or excessively harsh disciplinary action that is likely to result in physical injury, mental injury as defined in this section, or emotional injury. The significance of any injury must be evaluated in light of the following factors: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. Corporal discipline may be considered excessive or abusive when it results in any of the following or other similar injuries:

....
k. Significant bruises or welts.
Ch. 98-403, § 20, Laws of Fla. Thus, after 1998, a parent who spanked a child with such force or repetition as to cause significant bruises or welts could be considered to have abused the child under chapter 39.[[9]] Even if the Department of Children and Families did not initiate a dependency proceeding, the State could charge the parent with contributing to the dependency of a minor for such conduct.
785 So.2d at 645-46 (footnote omitted) (emphasis supplied). Accordingly, based upon this statutory evolution, the court explained:
[I]f a parent can be charged with the misdemeanor offense under section 827.04 when a spanking results in significant welts, the legislature intended more serious beatings that do not result in permanent disability or permanent disfigurement to be treated as simple child abuse under section 827.03(1). This reserves aggravated child abuse to cases involving parental discipline that results in great bodily harm or permanent disabilities and disfigurements or that demonstrates actual malice on the part of the parent and not merely a momentary anger or frustration.
Id. at 646. Finally, like the Fourth District in the instant case, the Second District disagreed with the First District's conclusion in Wilson that the statutory changes did not affect the extent of the privilege recognized in Kama.
To the extent Kama relied upon legislative intent, as explained in the preceding section, the legislative intent has changed. To the extent it relied upon any common law privilege for corporal punishment, that privilege is itself now defined and limited by the current statutory scheme. Pursuant to that scheme, a parent can be charged with simple child abuse for excessive corporal punishment that falls between the level of abuse required to establish the offense in section 827.04 and that required to prove a violation of section 827.03(2).
Id. at 647.[10]

Parental Privilege
We agree with the Fourth and Second Districts that under the current statutory *1020 scheme there is no parental privilege barring prosecution for felony child abuse under section 827.03(1). Although the 1988 statutory changes arguably only impacted part of the court's reasoning in Kama, the subsequent amendments to chapter 827 directly contradict the Kama court's finding that the Legislature has not provided for an offense less serious than a second-degree felony for a battery which exceeds the legal limits of a parent's disciplinary authority. See Kama, 507 So.2d at 158.
Indeed, section 827.03(1), defining felony child abuse, makes no exception for parents or the equivalent. As cogently stated by the Second District in McDonald:
The Florida Legislature has prudently continued the common law tradition permitting "reasonable" parental discipline. This tradition, however, is evinced by the elements of the statutory offenses created by the legislature and not by some separate, unwritten privilege created by the judiciary. Our current child abuse statutes do not exempt parents from prosecution for child abuse, but attempt to define the boundary between permissible parental discipline and prohibited child abuse.
McDonald, 785 So.2d at 642. Thus, it is not that felony child abuse by a parent is a nonexistent crime, but rather a parent may assert as an affirmative defense his or her parental right to administer "reasonable" or "nonexcessive" corporal punishment, i.e., a typical spanking, in a prosecution for simple child abuse. See Marshall v. Reams, 32 Fla. 499, 14 So. 95, 97 (1893) (recognizing the "right of a parent, or one standing in loco parentis, to moderately chastise for correction a child under his or her control and authority").
Such a view was expressed by the Fourth District in the decision below, as well as the First District in Nixon v. State, 773 So.2d 1213 (Fla. 1st DCA 2000), review dismissed, 790 So.2d 1106 (Fla. 2001), wherein the court explained that it did not intend its decision in Wilson to be interpreted as suggesting that child abuse by a parent is a nonexistent crime.[11]See also Brown v. State, 802 So.2d 434, 436 (Fla. 4th DCA 2001); Corsen v. State, 784 So.2d 535, 536 (Fla. 5th DCA 2001). Further, as noted previously, the Fourth District in the decision below disagreed with Wilson, stating that the First District failed to recognize that the Legislature had amended the statutes upon which Kama's reasoning was premised. See Raford, 792 So.2d at 480. The Fourth District interpreted the 1988 legislative changes to section 827.04, substituting "inflicts or permits the infliction of" for the prior language that provided "permits the infliction of," as eliminating the parental privilege recognized by Kama, except for simple battery, e.g., a typical spanking. See id. at 480.

CONCLUSION
Courts and legislative bodies have repeatedly recognized the difficulty in delineating a precise line between permissible *1021 corporal punishment and prohibited child abuse. See, e.g., McDonald, 785 So.2d at 647; Corsen, 784 So.2d at 536; Moakley v. State, 547 So.2d 1246, 1247 (Fla. 5th DCA 1989); cf. S.L. v. Dep't of Children & Families, 787 So.2d 973, 974 (Fla. 5th DCA 2001) (recognizing in dependency case the "delicate balance between the fundamental rights of parents to raise and discipline their children and the need to protect children from abuse"). However, we conclude that this difficult task is principally a legislative function, better left to the Legislature. As the Fourth District has previously observed: "Cases like this should stand as a warning to those, parents and others alike, who quickly turn to corporal punishment as a solution to child discipline problems. It is apparent that there is a serious risk of `going too far' every time physical punishment is administered." Herbert v. State, 526 So.2d 709, 712 (Fla. 4th DCA 1988).
Accordingly, we approve the Fourth District's decision in Raford and the Second District's decision in McDonald, concluding that a parent or one standing in loco parentis has no absolute immunity and may be convicted of the lesser offense of felony child abuse under section 827.03(1).[12] We disapprove of the First District's decision in Wilson to the extent it holds otherwise.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, and QUINCE, JJ., and HARDING, Senior Justice, concur.
LEWIS, J., concurs in result only.
NOTES
[1] In 1999, aggravated child abuse was enhanced to a first-degree felony. See ch. 99-168, § 16, at 951-52, Laws of Fla.
[2] Section 827.03(1) provides:

(1) "Child abuse" means:
(a) Intentional infliction of physical or mental injury upon a child;
(b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.
A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084
§ 827.03(1), Fla. Stat. (1997).
[3] As a result, the jury instructions on child abuse included the additional element of causing "great bodily harm, permanent disability, or permanent disfigurement."
[4] The Fourth District has since recertified conflict with Wilson in Brown v. State, 802 So.2d 434 (Fla. 4th DCA 2001).
[5] It appears that the common law recognized a parent's right to discipline his or her child in a "reasonable manner." See William Blackstone, Commentaries on the Laws of England 440 (Oxford Reprint 1966) (stating that a parent "may lawfully correct his child, being under age, in a reasonable manner. For this is for the benefit of his education."); see also Restatement (Second) of Torts §§ 147-55 (1965) (discussing parental privilege to use reasonable force to discipline children). Indeed, in Marshall v. Reams, 32 Fla. 499, 14 So. 95 (1893), this Court recognized the "right of a parent, or one standing in loco parentis, to moderately chastise for correction a child under his or her control and authority." Id. at 97. For a recent discussion of corporal punishment and the parental privilege, see Kandice K. Johnson, Crime or Punishment: The Parental Corporal Punishment Defense Reasonable and Necessary, or Excused Abuse?, 1998 U. 111. L.Rev. 413 (1998). See also Leonard P. Edwards, Corporal Punishment and the Legal System, 36 Santa Clara L.Rev. 983 (1996); H.D. Warren, Annotation, Criminal Liability for Excessive or Improper Punishment Inflicted on Child by Parent, Teacher, or One In Loco Parentis, 89 A.L.R.2d 396 (1963).
[6] The court continued:

The determination that a parent, or one standing in the position of a parent, has overstepped the bounds of permissible conduct in the discipline of a child presupposes either that the punishment was motivated by malice, and not by an educational purpose; that it was inflicted upon frivolous pretenses; that it was excessive, cruel or merciless; or that it has resulted in "great bodily harm, permanent disability, or permanent disfigurement."
Id.
[7] It is worth noting that at the time Kama was decided various statutory provisions in chapter 415, Florida Statutes (1985), concerning the protection of children from abuse, neglect and exploitation, indicated that the Legislature intended parents to be held accountable for injuries resulting from excessive corporal punishment. Section 415.503(3) provided: "`Child abuse or neglect' means harm or threatened harm to a child's physical or mental health or welfare by the acts or omissions of the parent or other person responsible for the child's welfare." § 415.503(3), Fla. Stat. (1985). "Harm," as defined, included "injury sustained as a result of excessive corporal punishment." § 415.503(7)(a), Fla. Stat. (1985) (emphasis supplied).
[8] The Second District appears to have mistakenly quoted section 39.01(2) as it now reads as a result of amendments in 1999, see ch. 99-193, § 4, at 1106, Laws of Fla., rather than the 1998 amendment. The actual 1998 amendment provided:

(2) "Abuse" means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. For the purpose of protective investigations, abuse of a child includes the acts or omissions of the parent, legal custodian, caregiver, or other person responsible for the child's welfare. Corporal discipline of a child by a parent, legal custodian, or caregiver guardian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child as defined in s. 415.503.
Ch. 98-403, § 20, at 3107, Laws of Fla. (additions are underlined; deletions are struck-through).
[9] The language concerning "corporal discipline of a child" in section 39.01(2) was first added in 1996 and cross-referenced "harm" as defined in section 415.503. See ch. 96-402, § 20, at 2638, Laws of Fla. At the same time, section 415.503(9), defining "harm," was amended to designate certain types of excessive corporal punishment as abuse, including "significant bruises or welts." See id. § 21, at 2638-39. Although section 415.503 was subsequently repealed, a definition of "harm" similar to that previously found in chapter 415 was incorporated into chapter 39. See ch. 98-403, §§ 20, 173, at 3111-14, 3246, Laws of Fla.
[10] Although the court concluded Wilson did not accurately reflect the current state of the criminal child abuse provisions, it declined to certify conflict with Wilson, noting that it was inclined to believe the act of discipline actually involved in Wilson would not constitute simple child abuse under its own analysis. See id. at 642. The Second District, however, subsequently certified conflict with Wilson in Creech v. State, 788 So.2d 349 (Fla. 2d DCA 2001).
[11] In particular, the court stated:

Child abuse as applied to a parent is not a non-existent crime. This court's decision in Wilson recognized that a parent, or one in parental authority, such as appellant, enjoys a privilege of corporal punishment. Thus, it is not that simple child abuse by a parent is a non-existent crime, rather, there is a parental privilege which may be asserted as an affirmative defense in a prosecution for simple abuse.
Id. at 1215 (citations and footnote omitted);
[12] We decline to address the other issues raised by petitioner because they are beyond the scope of the certified conflict in this case.