MAY, J.
The former husband appeals an Injunction for Protection against Domestic Violence. He argues the court erred in entering the injunction because the former wife failed in her burden of proof. We agree and reverse.
The parties were married in January 2011. The former wife filed for divorce in June 2012. In October 2012, the former wife petitioned for an injunction for protection against domestic violence. The petition alleged that in May 2012 the former husband grabbed the former wife’s arms, forced her onto the bed, and made unwanted sexual advances. He stopped when he understood that his advances were unwelcome. The trial court did not enter a temporary injunction, and held a hearing on October 10, 2012.
The former wife testified that the former husband grabbed her and tried to have sex, but she escaped. She introduced photos showing bruises on her arms. On cross-examination, she admitted that she was moving on the same day and that she may have gotten the bruises from carrying boxes.
The former husband testified that the bruises were not intentional if he caused them at all. If he caused the bruises, they came from “playing around.” On the day in question, the former wife tried to playfully throw him in the pool; he picked her up and carried her into the house, let the dogs lick her, and then let her go.
The former wife further testified that the former husband constantly called and text messaged her. None of his calls or messages was threatening in nature. He was simply trying to convince her not to divorce him. On one occasion, she saw him on a public beach with one of their dogs. She approached him, and had a friendly conversation for four hours.
The former wife’s daughter testified that she saw the former husband outside of her mother’s residence one day. She opened the door and yelled at him, and he ran away. The former husband testified that he was in the neighborhood to pay a neighbor, who did work for him. He ran when the daughter saw him because he did not want her to think he was spying. The neighbor confirmed the former husband’s story.
The trial court entered a Final Judgment of Injunction for Protection Against Domestic Violence. The former husband filed a motion for reconsideration, which was denied. From these orders, the former husband appeals.
The former husband argues the trial court erred in entering the injunction because there was insufficient evidence of either domestic violence or reasonable cause to believe the former wife was in danger of impending violence. We agree and reverse.
“When evaluating whether competent, substantial evidence supports a trial court’s ruling, ‘[Illegal sufficiency ... as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.’ ” Bñlhart v. BHlhart ex reí. S.L.B., 116 So.3d 617, 619 (Fla. 2d DCA 2013) (quoting Tibbs v. State, 397 So.2d 1120, 1123 (Fla.l981))(alterations in original).
Section 741.30(l)(a), Florida Statutes (2012), confers standing to seek an injunction against domestic violence on any person who has (1) actually been the victim of domestic violence, or (2) who on some other basis has reasonable cause to believe *241 that he or she faces impending danger from such violence. “‘Domestic violence’ means any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member.” § 741.28(2), Fla. Stat. (2012).
The May 2012 incident was the only claim of past domestic violence. The former wife testified that her former husband grabbed her and tried to have sex, but he stopped when he saw that she was not interested. Even so, she claims to have sustained bruises on her arms. The former husband testified that the incident was a form of horseplay with no harmful intent. At the time it occurred, they had been together for six years and were still married.
“Battery” is the actual and intentional touching or striking of another person against their will. § 784.03(l)(a)l., Fla. Stat. (2012). While the former husband admitted to touching the former wife, no one testified that he knew it was against her will. Here, the evidence did not establish that the former husband acted with the purpose of causing an offensive or harmful contact. See Restatement (Second) of Torts § 18, cmt. e & f (1965).
Bonge v. State, 53 So.3d 1231 (Fla. 1st DCA 2011), provides a good factual analogy. There, the defendant forcibly removed his elderly mother from her nursing home. Id. at 1232. His intent was to help her get to the car. Id. However, his mother said she did not want to go because it was cold outside. Id. The First District held that these facts were insufficient to establish a prima facie case of battery. Id. at 1233.
Although the evidence here established that the former husband intended to touch the former wife, there was no evidence to establish that the former husband intended to touch her against her will. The length of time between the incident and the filing of the petition also supports this conclusion. See Gill v. Gill, 50 So.3d 772, 774 (Fla. 2d DCA 2010) (“an isolated incident of domestic violence that occurred years before a petition for injunction is filed will not usually support the issuance of an injunction in the absence of additional current allegations”).
Without proof of actual past domestic violence, the former wife’s petition was reliant on proof that she reasonably believed she faced impending danger from future violence. To support this claim, the former wife introduced three pieces of evidence: (1) phone calls and text messages, (2) the. beach encounter, and (3) the daughter’s sighting of the former husband in the neighborhood.
The petition alleged the former husband excessively called and texted the former wife and family members. The former wife testified that the content involved the former husband asking her to go to dinner, to go on trips with him, and telling her he was going to file for divorce if she did not come back. She testified that none of the phone calls or texts threatened physical violence, but they caused “mental anguish.” The former husband testified that he never texted more than a couple of times a day.
“[T]he statutory definition of ‘domestic violence’ requires some showing of violence or a threat of violence[,] general harassment does not suffice.” Young v. Smith, 901 So.2d 372, 373 (Fla. 2d DCA 2005). There was nothing to suggest the former husband’s phone calls and text messages reasonably caused the former wife to believe she was in imminent danger.
The former wife testified that she saw the former husband on the beach with one *242 of their dogs. She admitted that it was a public beach, and that she approached him. They had a friendly conversation for four hours. Further, the former wife’s daughter testified to seeing the former husband in the neighborhood, but he had a reasonable explanation for this presence. The evidence was simply insufficient to establish a fear of imminent danger. See, e.g., Jones v. Jones, 32 So.3d 772 (Fla. 2d DCA 2010).
Although the injunction has now expired, we reverse and remand with instructions to vacate the injunction due to the collateral consequences such an injunction might cause. See, e.g., Gill, 50 So.3d at 776; Jones, 32 So.3d at 774; Oetbmeier v. Oettmeier, 960 So.2d 902 (Fla. 2d DCA 2007) (reversing and remanding with instructions to vacate based on insufficiency of the evidence).

Reversed and Remanded.

DAMOORGIAN, C.J., and FORST, J., concur.