DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLES HAROLD BECHERT, III,**
Appellant,

v.

**LUCIANA SURBAN BECHERT,** o.b.o. **O.B.,**
Appellee.

No. 4D2024-0951

[April 9, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Susan Lebow, Senior Judge, and Elaine A. Carbuccia, Judge; L.T. Case No. DVCE23-000072.

Natalie P. Mescolotto of NM Legal, P.A., Fort Lauderdale, and Christopher N. Link of Christopher N. Link, P.A., Plantation, for appellant.

Adam B. Swickle of Swickle & Associates, PLLC, Fort Lauderdale, for appellee.

CONNER, J.

Charles Bechert ("the father") appeals a domestic violence injunction ("DV injunction") entered against him to protect his minor daughter. The father raises three arguments on appeal for reversal. We affirm the trial court on two of the arguments without discussion. We agree with the father's third argument that his actions, consistent with the trial court's findings, as opposed to the "terribly exaggerated" claims in the underlying petition, were appropriate physical punishment of his daughter, and not domestic violence. On that issue we reverse. Adopting the reasoning the First District Court of Appeal employed in *G.C. v. R.S.,* 71 So. 3d 164 (Fla. 1st DCA 2011), we hold under established Florida law, reasonable and non-excessive parental corporal discipline is not domestic violence as a matter of law. We therefore reverse the DV injunction, explain our decision, and remand for the trial court to vacate the DV injunction issued against the father.[1]

---

[1] Although the DV injunction under review has now expired, we still "reverse and remand with instructions to vacate the injunction due to the collateral

*Background*

The underlying petition for a DV injunction was filed by the mother on behalf of the parties' then-fourteen-year-old daughter. The parents divorced in 2018. The incident giving rise to the injunction occurred on December 31, 2022.

The petition alleged the father: (1) punched the daughter in the head, stomach, and back; (2) grabbed the daughter by the hair, pulled her to ground, and sat on top of her; (3) while sitting on top of the daughter, "squish[ed]" her head into the floor and punched and slapped her head and face until she started throwing up; and (4) continued to punch the daughter and then stood up and kicked her in the stomach and back multiple times.

The trial court appointed a Guardian ad Litem ("GAL") to address the best interests of the daughter concerning the DV injunction proceedings.

At the final hearing, the father testified that on the night of the incident, he and the daughter had just returned from a Colorado ski vacation. After arriving at the father's house, the daughter gave the father a Christmas present of socks. Shortly after, the father became concerned the socks were stolen. The father searched the daughter's room to see if there were other stolen items. In her backpack she carried on the trip, the father found marijuana, a pipe, and a vape pen. The father announced he was going to punish the daughter for stealing, lying, and possessing marijuana and a vape pen by taking away her phone. The daughter refused to give the father the phone and they "tussled" over it. At some point, the daughter snapped the father's finger back and broke it. The father denied punching her, pulling her hair, sitting on her, or that she vomited.

The father next testified the daughter followed him out of her room to the kitchen, demanding her phone. The father refused and the daughter threw a metal thermos and an orange juice bottle. A video recording of what transpired in the kitchen was entered into evidence.

consequences such an injunction might cause." *Stone v. Stone*, 128 So. 3d 239, 242 (Fla. 4th DCA 2013); *see also Bell v. Battaglia*, 332 So. 3d 1094, 1097–99 (Fla. 2d DCA 2022) (listing cases where "Florida appellate courts have routinely decided appeals from expired [DV] and stalking injunctions on the merits because of the 'collateral consequences'" resulting from the injunction).

The daughter left the home and went to a next-door neighbor's house. The neighbor testified he did not see any bruises or red marks on her face or other injuries, but she was crying. The daughter used the neighbor's phone to text her mother to pick her up. The daughter told the neighbor she had gotten into an argument with her father but did not need the neighbor to call the police. The daughter then went back to the father's house. The neighbor testified the daughter did not seem fearful to return to her father's house. She then came back to the neighbor's house and asked for a ride to the mother's house. During the car ride, the neighbor did not see any physical injuries on the daughter.

The mother testified she was away from her home but came home when she received her daughter's text message. When the mother gave the daughter a hug, the mother saw a bruise on the daughter's back. The daughter also had a bruise on her leg and arm. The mother took pictures of the daughter's back, leg, and the upper right arm around 9:00 am the next day. The pictures were admitted into evidence along with a picture of the daughter's face.

The Child Protective Investigator ("CPI") testified there were "no indicators of mental or physical injury because the parties were deemed as mutual combatants." The CPI observed "a little black and blue" on the daughter's shoulder and arm but no bruising or marks; there were also no welts or bruises on her face. A copy of the CPI's report was admitted into evidence.

The GAL testified she believed the New Year's Eve incident was a mutual combatant situation, and it was "absolutely 100 percent inappropriate."

The daughter gave in-camera testimony.

In closing argument, the father argued there was no evidence the daughter was the victim of domestic violence or in objective fear of domestic violence. The father also argued he had merely disciplined his child and he did not commit domestic violence. The mother argued the father's actions did not constitute corporal punishment because they caused harm to the daughter.

At the end of the final hearing, the trial court summarized the testimony and its findings:

> That before this incident on December the 31st of 2022 [the daughter] was primarily with Mom. Although there had been a parenting plan setting forth 50/50 time-sharing, for

3

whatever reason, it doesn't matter what the reasons were, [the father] was not seeing her on a regular basis. Then came this winter break and an opportunity for her to go with him to Colorado, which everyone seemed to be in agreement with. She had a wonderful time. She loved seeing the snow, she had a great time skiing and then she came home. When I say "home" she came to [the father]'s home. And Mr. – she gave [the father] as a Christmas gift a pair of socks. [The father] was concerned that she did not pay for those socks and he came into the room and confronted her. She denied that she had stolen them. There was also [the father]'s testimony that he found pot and a vape pen. She refused to reply about the socks and he told her she was going to lose her phone. And with that there is the issue of physicality. Because she resisted giving him the phone, he, physically, wrenched it from her. During that process she -- I believe that the evidence is that she had this fear. There's no evidence to substantiate any previous type of physical assault on this child. And at the age of 14 to all of a sudden have a parent become physically assertive, to use a nice word, is -- it's not unreasonable for her to have a fear of him, physically.

The trial court noted it was "in the child's best interest right now to feel as secure as I can make her feel." The trial court also found "the violence that [the mother] put in that petition . . . was terribly exaggerated. But, this child has a fear that she's going to be made into, you know, all of a sudden having to spend time with this father she doesn't know and doesn't trust." (emphasis added). The trial court further found there was reasonable competent substantial evidence that the daughter is in fear. Accordingly, the trial court granted the injunction for six months and ordered the father and daughter to engage in reunification therapy.

The father gave notice of appeal after his rehearing motion was denied.

*Appellate Analysis*

"An order granting an injunction in the domestic violence context is reviewed for abuse of discretion." *Chiscul v. Hernandez*, 311 So. 3d 55, 57 (Fla. 4th DCA 2021) (citing *Selph v. Selph*, 144 So. 3d 676, 677 (Fla. 4th DCA 2014)). A trial court's order granting an injunction must be supported by competent, substantial evidence. *Id.* "'[L]egal sufficiency . . . as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.'" *Id.* (quoting *Selph*, 144 So. 3d at 677). "Whether the evidence is legally sufficient to support entry of an injunction is a question

4

of law that is reviewed de novo." *Fingers v. Fingers*, 353 So. 3d 1283, 1285 (Fla. 5th DCA 2023) (citation omitted).

The DV injunction in this case was entered pursuant to section 741.30(1)(a), Florida Statutes (2022), which allows the entry of a DV injunction to protect a person "who is either the victim of domestic violence as defined in s. 741.28 or has reasonable cause to believe he or she is in imminent danger of becoming the victim of any act of domestic violence . . . ." Section 741.28(2), Florida Statutes (2022) defines "domestic violence" as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member."

The father argues there was no competent, substantial evidence presented to the trial court to support the DV injunction. The premise of his argument is the evidence showed the altercation between father and daughter was nothing more than the father exercising his right to discipline his child. The father further argues the trial court's findings of fact support the conclusion his actions were appropriate physical discipline, rather than an assault, battery, aggravated assault, or aggravated battery.

The father correctly argues there was no evidence of a history of domestic violence by the father toward the daughter or that the father had engaged in behavior in the past that would give the daughter reason to objectively believe she was imminently about to be subjected to domestic violence. The father also correctly argues the trial court found the daughter's fear as to the future was "a fear she's going to be made into, you know, all of a sudden having to spend time with this father she doesn't know and doesn't trust."

The DV injunction in this case was based solely on the New Year's Eve physical incident between the father and daughter. In its oral summary of the evidence, the trial court described the "physicality" used by the father as "he, physically, wrenched [the cellphone] from her." Significantly, the trial court made no mention of any other physical contact by the father or injury to the daughter.

Based on oral statements of the trial court at the final hearing, we agree with the father's argument that the trial court determined his physical and verbal actions in taking away the daughter's cell phone was punishment for perceived theft and possession of marijuana and a vape pen. The father

argues his actions were appropriate physical punishment, not domestic violence.

We agree with the father's arguments and reverse because we adopt the First District's holding in *G.C. v. R.S.*, 71 So. 3d 164 (Fla. 1st DCA 2011). In *G.C.*, the First District held, under established Florida law, reasonable and non-excessive parental corporal discipline is not domestic violence as a matter of law. *Id.* at 165.

*G.C.* reviewed a final DV injunction entered after the trial court determined the legislature did not permit any exceptions to the protection against domestic violence afforded by the statute, including parental discipline. *Id.* at 166. The First District's analysis began with the proposition that "the common law recognize[s] a parent's right to discipline his or her child in a 'reasonable manner.'" *Id.* (quoting *Raford v. State*, 828 So. 2d 1012, 1015, n.5 (Fla. 2002)). The First District then noted that in *Raford*, the supreme court held "the parental privilege to use corporal discipline does not provide absolute immunity to charges of child abuse under section 827.03, however, it may be asserted as an affirmative defense to criminal child abuse charges. *Id.* (citing *Raford*, 828 So. 2d at 1020). The First District then reasoned, "[a]lthough chapter 741 governing domestic violence injunctions does not expressly incorporate the common law principle 'that parents may administer corporal discipline to their children; provided, [] the discipline is reasonable' . . . neither does it exclude the common law defense." *Id.* (internal citation omitted) (emphasis added). The First District then cited our opinion in *Moore v. Pattin*, 983 So. 2d 663 (Fla. 4th DCA 2008), as authority for concluding the DV injunction in *G.C.* should be reversed because the father's corporal discipline was reasonable. *Id.*

As *G.C.* observed, we implicitly recognized in *Moore* that appropriate parental discipline can be a defense to a DV injunction. 983 So. 2d at 664–65.

In *Moore*, the trial court issued the DV injunction after disagreeing with the father's argument that his action disciplining his child was constitutionally and statutorily protected. *Id.* at 663–64. The trial court concluded the child's spanking was excessive and not protected. *Id.*

Our analysis began with the premise that, under the common law, "parents may administer corporal discipline to their children; provided, however, that the discipline is reasonable.'" *Id.* at 664 (quoting *A.A. v. Dep't of Child. & Fam.*, 908 So. 2d 585, 587 (Fla. 5th DCA 2005)). We also recognized the statutory provisions protecting against child abuse contain

an exception for "corporal discipline of a child by a parent." *Id.* (citing § 39.01(2), Fla. Stat.). After reviewing the record evidence, we concluded in *Moore*, the DV injunction was proper because we agreed with the trial court that the corporal punishment in that case was excessive. *Id.* at 665.

In the instant case, we are satisfied the father's actions in trying to take the cellphone away from the daughter was a form of physical discipline, but it was not traditional corporal punishment. However, even if we were to consider the father's "wrenching" the cellphone away from the daughter was corporal punishment, such was not excessive punishment because the daughter refused to surrender the phone and "[b]ecause there was no evidence of disfigurement or significant bruising[.]" *Moore*, 983 So. 2d at 665; *see also J.C. v. Dep't of Child. & Fam.*, 773 So. 2d 1220 (Fla. 4th DCA 2000) (father spanking his child with a belt which on one occasion left a mark did not constitute abuse within the meaning of the dependency statutes as it was not excessive or abusive corporal punishment). The trial court below even recognized the evidence was not "clearly about the physical injury . . ." and the violence alleged in the petition was "terribly exaggerated."

The trial court entered the DV injunction below to make the daughter "feel as secure" as the trial court could. However, the daughter's fear of being forced "to spend time with this father she doesn't know and doesn't trust" is not competent, substantial evidence supporting entry of a DV injunction. Instead, the competent, substantial evidence showed the father imposed an appropriate and lawful form of corporal punishment against his daughter, which is not grounds for a DV injunction against him. *See G.C.* 71 So. 3d at 165.

*Conclusion*

Having determined the record does not contain competent, substantial evidence that the father engaged in domestic violence against the daughter, and instead, establishes the father used appropriate physical punishment to discipline his daughter, we reverse the DV injunction entered against the father and remand for the trial court to vacate the injunction.

*Reversed and remanded with instructions.*

LEVINE and ARTAU, JJ., concur.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*