773 So.2d 1213 (2000)
Steven NIXON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D99-1634.
District Court of Appeal of Florida, First District.
December 12, 2000.
Nancy A. Daniels, Public Defender and Judith Dougherty Hall, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Trisha E. Meggs, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, J.
Steven Nixon appeals a judgment of conviction for child abuse. We affirm all issues raised on appeal. We write to address appellant's argument that reversal is required because child abuse by a parent in the course of discipline is privileged under section 827.03(1)(b), Florida Statutes (1997).
Appellant was charged with two counts of aggravated child abuse. The alleged victim in the information is appellant's *1214 stepson, B.M., who at the time of the offenses was a fifth grader. At the ensuing trial, the state adduced evidence that B.M. revealed to a school counselor that he had been corporally punished as a result of his misbehavior at school. He showed this counselor his right thigh and buttock, which to the counselor demonstrated significant injuries. B.M. revealed to the counselor that his stepfather routinely beat him with an electrical cord stripped to the bare wire. The sheriff's department was notified and B.M. was shortly interviewed by a child protection team investigator. B.M. recounted repeated excessive corporal punishment at the hands of his stepfather and showed wounds on his lower back, buttock, and right thigh. This investigator testified at trial that she had been an investigator for seven years prior to moving to the guardian ad litem, and the injuries she saw on B.M. were greater than any type of abuse she had seen.
Also testifying at Nixon's trial was a deputy assigned to the school as a resource officer. She too viewed the wounds and testified as to the accuracy of photographs introduced into evidence. Steven Nixon was arrested that evening, and upon his arrest gave a statement to police after being advised of his Miranda[1] rights. The statement was read to the jury at trial, and included the admission that he would give B.M. "five licks" at a time to "try to teach him a lesson."
The prosecution also called Howard Rogers, M.D., a pediatrician at the University of Florida and medical director of the university's child protection team. He was accepted as an expert in child abuse, and testified that after obtaining a history from the child, he conducted a physical examination, which included the taking of photographs. His examination was conducted approximately two months after B.M. had been removed from the home of his mother and stepfather, who had been arrested. The doctor testified that B.M.'s examination proved normal with the exception of "significant ... multiple curvilinear marks" which the doctor explained is "a particular type of mark that we see on children ... which is present when a child has been hit with a particular object." The doctor further explained that such a mark is typically left by a cord, rope, or belt. The fact that B.M. developed keloid scars was "representative of injuries that had been significant enough to create a break in the skin, some bleeding, that has healed together." The scarring was in a criss-cross pattern indicating to the doctor that B.M. had been repeatedly struck on more than one occasion. Rogers added that at the time he had seen this victim, the doctor had examined approximately 150 children as part of the child protection team who had been suspected of being the victims of child abuse, and during that tenure, he had seen perhaps "one other case in the 150 that was this bad and certainly, this was one of the most severe, if not the most severe case." In short, Rogers opined that the child abuse inflicted upon B.M. was "extensive."
The defense produced evidence from friends, neighbors and relatives of the appellant and his wife that B.M. was quite unhappy when his mother married the stepfather and deeply resented the stepfather's role in his life. The defense also produced evidence that B.M. had a reputation for untruthfulness, and had lied about various matters regarding his stepfather.
At trial, the defense request for an instruction on the lesser-included offense of simple child abuse was granted by the trial court. The jury returned a verdict finding appellant guilty of two counts of the lesser-included offense of simple child abuse.
On appeal, appellant argues that the conduct for which he is being punished is privileged under Wilson v. State, 744 So.2d 1237 (Fla. 1st DCA 1999). Thus, appellant contends that under Wilson there is no offense of simple child abuse with regard to a stepparent or parent, and *1215 his conviction for this nonexistent crime constitutes fundamental error.
We do not address whether appellant's actions are privileged under Wilson because we conclude that appellant has waived any Wilson affirmative defense by requesting a jury instruction on simple child abuse. See State v. Espinosa, 686 So.2d 1345 (Fla.1996). In Espinosa, the supreme court considered the question of "whether a defendant can request and rely on an instruction on a permissive lesser-included offense and then complain that a subsequent conviction for the lesser-included offense is improper because there is insufficient evidence to convict a defendant for that offense." Id. at 1348. The supreme court held that a defendant could not request a lesser included offense and then seek to challenge a conviction on that lesser included offense, explaining that
to hold otherwise would allow a defendant to request an instruction on the lesser-included offense in anticipation that the jury will exercise its "pardon power," after which the defendant could seek reversal based on the sufficiency of the evidence.... Such a holding would allow a defendant to essentially "sand bag" the State while committing a fraud on both the jury and the judge. Consequently, we find that a defendant who requests an instruction on a lesser-included offense or affirmatively relies thereon may contest the sufficiency of the evidence on a lesser-included offense only when the evidence is insufficient to convict a defendant on the greater charge as well.
Id. at 1348-9.
We are not suggesting that appellant or his attorney attempted to perpetuate a fraud upon the trial court in requesting an instruction on a lesser-included offense. Rather, it appears that the decision to request such a lesser-included offense instruction was a matter of trial strategy, and a sound strategy given the fact that the jury returned a verdict on this lesser-included offense. Nevertheless, having requested a lesser-included offense, under Espinosa appellant waived the right to assert a privilege against the prosecution for battery upon a child by a parent or one in parental authority.
Appellant argues that child abuse by a parent is a non-existent crime and that, under Fredericks v. State, 675 So.2d 989 (Fla. 1st DCA 1996), a "conviction of a non-existent crime is fundamental error mandating reversal even when the error was invited by the defendant ... by request for a jury instruction on the nonexistent offense." Id. at 990. We cannot agree. Child abuse as applied to a parent is not a non-existent crime. This court's decision in Wilson recognized that a parent, or one in parental authority, such as appellant, enjoys a privilege of corporal punishment. Wilson, 744 So.2d at 1240; see also Kama v. State, 507 So.2d 154 (Fla. 1st DCA 1987).[2] Thus, it is not that simple child abuse by a parent is a nonexistent crime, rather, there is a parental privilege which may be asserted as an affirmative defense in a prosecution for simple child abuse. Compare State v. Hauenstein, 121 Ohio App.3d 511, 700 N.E.2d 378 (1997)(the right of proper and reasonable parental discipline is an affirmative defense available to a parent faced with possible conviction for actions taken while disciplining a child); People v. Checketts, 71 Cal.App.4th 1190, 84 Cal. Rptr.2d 491, 494 (4th Dist.1999)(parents prosecuted for battery of their children may assert parental authority as a defense; but when a defendant fails to assert the defense at trial, the court is not under an obligation to instruct the jury on the defense); Wisconsin v. Teynor, 141 Wis.2d 187, 414 N.W.2d 76 (App.1987)(parental status affords only a privilege which may be asserted as a defense to prosecution for *1216 any crime by a parent against his or her child if the conduct is reasonable discipline of the child). But this affirmative defense can be waived. See Ray v. State, 403 So.2d 956, 961 (Fla.1981). By requesting a lesser-included offense instruction, a defendant waives his right to contest the conviction for the lesser-included offense unless the evidence is insufficient to convict the defendant on the greater charge. See Espinosa, 686 So.2d at 1348-9.
The evidence provided in the victim's testimony as well as that of the doctor's testimony are sufficient to support a conviction for aggravated child abuse. See § 827.03(2), Fla. Stat. (Supp.1996). Accordingly, we affirm appellant's conviction for two counts of simple child abuse.
AFFIRMED.
JOANOS AND LAWRENCE, JJ., CONCUR.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Conflict with Wilson was certified in Raford v. State, 25 Fla. L. Weekly D2271 (Fla. 4th DCA Sept. 20, 2000)(The 1999 legislative changes following Kama v. State, 507 So.2d 154 (Fla. 1st DCA 1987) eliminate the parental privilege recognized in Kama).