979 So.2d 365 (2008)
STATE of Florida, Appellant,
v.
Anne LANIER, Appellee.
No. 4D06-4526.
District Court of Appeal of Florida, Fourth District.
April 16, 2008.
*366 Bill McCollum, Attorney General, Tallahassee, and Richard Valuntas and Thomas A. Palmer, Assistant Attorneys General, West Palm Beach, for appellant.
J. David Bogenschutz of Bogenschutz, Dutko & Kroll, P.A., Fort Lauderdale, for appellee.
PER CURIAM.
The state appeals the trial court's order granting a defendant's sworn motion to dismiss an information under Florida Rule of Criminal Procedure 3.190(c)(4). We affirm because the undisputed facts did not rise to the level of the criminal conduct charged.
The information in this case alleged that Anne Lanier, an elementary school teacher:
Count I [Child Abuse]
. . . did knowingly or willfully abuse a child by committing an intentional act that could reasonably be expected to result in physical or mental injury to S.Y., a child, by stomping on the foot of S.Y. with her foot without causing great bodily harm, permanent disability, or permanent disfigurement to S.Y., contrary to F.S. 827.03(1).
Count II [Child Abuse]
. . . did knowingly or willfully abuse a child by committing an intentional act that could reasonably be expected to result in physical or mental injury to S.C., a child, by causing S.C. to be seated in a chair in very close proximity to descending steps knowing that S.C. suffered from an attention deficit disorder and developmental delays, and was experiencing behavioral difficulties, and/or did cause the chair in which S.C. was seated to fall down steps, without causing great bodily harm, permanent disability, or permanent disfigurement to S.C., contrary to F.S. 827.03(1).
Count III [Child Neglect]
. . . while being a caregiver to S.C., a child, did willfully or by culpable negligence, neglect S.C. by failing or omitting to provide the care, supervision, and services necessary to maintain the physical and mental health of S.C., including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine and medical services that a prudent person would consider essential for the well-being of S.C., without causing great bodily harm, permanent disability, or permanent disfigurement to S.C., to wit: by causing S.C. to be seated in a chair in very close proximity to descending steps knowing that S.C. suffered from an attention deficit disorder and developmental delays, and was experiencing behavioral difficulties, contrary to F.S. 827.03(3)(c).
Lanier filed a sworn motion to dismiss each of the three counts under Rule 3.190(c)(4). The state's traverse did not deny any of the material facts contained in the sworn motion, but alleged several additional facts. Lanier accepted the state's additional factual allegations as true for purpose of the motion; the trial court properly considered all of these facts to rule on the motion. See State v. Kalogeropolous, 758 So.2d 110 (Fla.2000); State v. Teague, 452 So.2d 72 (Fla. 1st DCA 1984); Kuhn v. State, 439 So.2d 291 (Fla. 3d DCA 1983); State v. Holliday, 431 So.2d 309 (Fla. 1st DCA 1983), approved, 465 So.2d 524 (Fla. 1985).
*367 For the purpose of the motion to dismiss, the undisputed facts are:
Count IChild Abuse Upon S.Y.: Undisputed Material Facts
1. S.Y. was four years old at the time of the incident;
2. While walking on school grounds, S.Y. stepped on the foot of another student;
3. Defendant then asked S.Y. if S.Y. would like to be stepped on, and then intentionally and forcefully stomped on S.Y.'s foot;
4. At the time, S.Y. stood on a concrete surface and wore sneakers on his feet;
5. S.Y. had no lasting injuries, no bruises, and no physical trauma that required any treatment;
6. S.Y.'s mother was unable to determine, even after he went home, whether or not he had sustained any injury whatsoever; and
7. The policy of the Broward County School Board provided that "corporal punishment shall not be used under any circumstances."
Counts II and IIIChild Abuse and Child Neglect Upon S.C.[1]
1. S.C. was four years old at the time of the incident;
2. S.C. suffered from Attention Deficit Hyperactivity Disorder and autism or an autism-related disorder;
3. Defendant was fully aware S.C. suffered from these disorders;
4. S.C. was misbehaving and was difficult to manage or control in the classroom and Defendant acted to "punish" S.C. for disrupting nap time for other students;
5. Defendant placed S.C. unrestrained in a small chair outside of the classroom;
6. S.C. was within Defendant's sight and was a short distance outside the portable classroom.
7. The chair was positioned immediately at the top of and facing toward a descending set of three concrete or metal steps;
8. Defendant then pushed the chair, in which S.C. was seated, towards the steps with her foot;
9. S.C. fell down the steps and struck his head on some part of the stairway or ground, injuring his head and leg;
10. S.C.'s injuries substantially cleared up in a relatively short amount of time; and
11. The policy of the Broward County School Board in effect at the time provided that "corporal punishment shall not be used under any circumstances."
The trial court, relying primarily on King v. State, 903 So.2d 954 (Fla. 2d DCA 2005), dismissed the child abuse counts (Counts I and II). Following State v. Sammons, 889 So.2d 857 (Fla. 4th DCA 2004), the court dismissed the child neglect count (Count III). We review de novo the trial court's order of dismissal. See State v. Santiago, 938 So.2d 603 (Fla. 4th DCA 2006).
The function of a motion to dismiss is to test the legal sufficiency of the state's case. See Sammons, 889 So.2d at 858. A motion to dismiss "is well taken only if no material facts are in dispute and the most favorable construction of the undisputed facts in favor of the [s]tate would not establish a prima facie case of guilt." Sammons, 889 So.2d at 858. "To make a *368 prima facie case, the [s]tate may rely on circumstantial evidence; all inferences from facts revealed by the motion and related papers are resolved in favor of the [s]tate." Id. Such circumstantial evidence "must be consistent with the defendant's guilt and inconsistent with any reasonable hypothesis of innocence." Wilson v. State, 824 So.2d 335, 337 (Fla. 4th DCA 2002) (quoting Bowen v. State, 791 So.2d 44, 52 (Fla. 2d DCA 2001)); accord State v. Law, 559 So.2d 187, 188 (Fla.1989).
Section 827.03(1), Florida Statutes (2006), defines the crime of "child abuse" as:
(a) Intentional infliction of physical or mental injury upon a child;
(b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child. A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree.
"Mental injury" under the statute is "an injury to the intellectual or psychological capacity of a child as evidenced by a discernable and substantial impairment in the ability to function within the normal range of performance and behavior." § 39.01(43), Fla. Stat. (2002); see DuFresne v. State, 826 So.2d 272, 277-78 (Fla.2002); Zerbe v. State, 944 So.2d 1189, 1193 (Fla. 4th DCA 2006).
As to both S.Y and S.C., the state charged child abuse under section 827.03(1)(b)that Lanier committed an "intentional act that could reasonably be expected to result in physical or mental injury to a child."
The circuit court correctly relied upon King to dismiss the charges based on section 827.03(1)(b). King involved a teacher who spanked a student with a wooden paddle; the student "suffered significant welts and bruises on her buttocks." 903 So.2d at 955. The state charged the teacher with violating section 827.03(1). Reversing the teacher's conviction, the second district held that "spankings that result in `significant bruises or welts' do not rise to the level of felony child abuse" under section 827.03(1), which requires "more serious beatings that do not result in permanent disability or permanent disfigurement." King, 903 So.2d at 955 (quoting State v. McDonald, 785 So.2d 640, 646 (Fla. 2d DCA 2001)). Also, the court noted that there was "no corresponding mental injury." Id. at 956. We applied King in Zerbe, a case involving the conduct of a karate instructor; we reversed a conviction under section 827.03(1)(b) and held that as a matter of law the teacher's "repetitive requests for" an eleven year old child "to go to the bathroom" could not "reasonably be expected to cause mental injury." 944 So.2d at 1193.
Lanier's conduct in this case is less egregious than that of the defendant in King. There was no intentional act that could "reasonably be expected to result in physical or mental injury to a child" under section 827.03(1)(b). The foot "stomp" caused no bruises, no physical trauma, and required no treatment; such an act could not "reasonably be expected" to cause physical injury. Similarly, pushing a chair "towards" steps, or positioning a chair near steps, is very different from pushing a chair down the steps. Sitting near steps, even for a child with ADHD, is not an activity that could reasonably be expected to result in physical injury to the child.
We reject the state's contention that Lanier's violation of a school board *369 policy against corporal punishment is significant in deciding whether there has been a section 827.03(1) violation. The statute defines the crime in terms of "reasonableness," focusing on the nature and extent of an act, rather than on the authority to impose physical discipline. A teacher stands in loco parentis to a student. See State v. Christie, 939 So.2d 1078, 1079-80 (Fla. 3d DCA 2005); State v. D.T.W., 425 So.2d 1383, 1386 (Fla. 1st DCA 1983). At common law, one standing in loco parentis had the right "to moderately chastise for correction a child under his or her control and authority." Raford v. State, 828 So.2d 1012, 1015 n. 5 (Fla.2002) (quoting Marshall v. Reams, 32 Fla. 499, 14 So. 95 (1893)). Nothing in section 827.03, or any related statute, abolishes that right. While a teacher may be subject to disciplinary charges for violating the school board's employment policy, that policy does not trump the argument that certain conduct has not violated the criminal law.
To permit local regulations to control the definition of a criminal statute runs afoul of Florida's policy that the criminal law be "uniform throughout the state." State v. Lozano, 616 So.2d 73, 76 (Fla. 1st DCA 1993); State v. Oehling, 750 So.2d 109, 111 (Fla. 5th DCA 1999). The supreme court construed a provision of an earlier constitution to mean that laws for the punishment of crime must be "of uniform operation throughout the State." City of Fort Lauderdale v. King, 222 So.2d 6, 7-8 (Fla.1969); see also Carlton v. Johnson, 61 Fla. 15, 55 So. 975 (1911). That policy was carried over into Article III, Section 11(a)(4) of the current Florida Constitution, which provides that there "shall be no special law or general law of local application pertaining to . . . punishment for crime." If the application of a criminal statute hinges on the existence of a local policy, then the statute fails to "give fair warning . . . of the nature of the conduct proscribed" contrary to section 775.012(2), Florida Statutes (2007).
Count III of the information charged a violation of section 827.03(3)(c). We agree with the trial court's determination that the undisputed material facts did not establish a prima facie case of guilt on the charge of child neglect. The pertinent portion of the statute, section 827.03(3) provides:
(3)(a) "Neglect of a child" means:
1. A caregiver's failure or omission to provide a child with the care, supervision, and services necessary to maintain the child's physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the child;
* * *
2.(c) A person who willfully or by culpable negligence neglects a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree.
The State argues that a prima facie case of child neglect was established because Lanier failed "to provide the supervision necessary to maintain his physical health when she seated him on the edge of the steps and pushed his chair . . . and caused S.C. to fall over the edge and tumble down the stairs. . . ." However, the episode consisted of a series of continuous events during which S.C. was within sight of the teacher, and just outside the portable classroom. The facts indicate that the teacher was "actually keeping an eye" on the child rather than ignoring him. Sammons, 889 So.2d at 859. As we held in similar circumstances in Sammons, Lanier's conduct did fail to provide the child *370 with supervision "necessary to maintain the child's" physical health. Id.
Affirmed.
KLEIN and GROSS, JJ.
EMAS, KEVIN, J., Associate Judge, concurs in part and dissents in part with opinion.
EMAS, KEVIN, J., Associate Judge, concurring in part and dissenting in part.
I agree with the majority that the undisputed facts fail to establish a prima facie case of child neglect (Count III). However, I disagree with the majority's holding that, as a matter of law, the undisputed facts fail to establish a prima facie case of child abuse. Counts I and II of the information allege that Defendant committed child abuse under section 827.03(1)(b) by engaging in "an intentional act that could reasonably be expected to result in physical or mental injury to the child." The majority concludes that the trial court properly relied upon King v. State, 903 So.2d 954 (Fla. 2d DCA 2005), in dismissing these counts. King was premised upon a teacher's assertion of the affirmative defense of parental privilege to use reasonable corporal punishment upon a student. Under Florida's current statutory scheme, however, this affirmative defense is unavailable to Defendant, and the holding and rationale of King are thus inapplicable to this case.
In Raford v. State, 828 So.2d 1012 (Fla. 2002), the Supreme Court reviewed the caselaw interpreting Florida's child abuse laws and their interplay of those laws with the common law parental privilege of corporal punishment. As the majority correctly notes, Raford recognized that, at common law, a parent or one standing in loco parentis (such as a teacher) had the right to reasonably discipline a child under his or her control and authority. Citing this language, the majority in the instant case concludes that "[n]othing in section 827.03, or any related statute, abolishes that right. While a teacher may be subject to disciplinary charges for violating the school board's employment policy, that policy should not trump the argument that certain conduct has not violated the criminal law."
However, the Raford court's reference to the common-law origins of the parental privilege was merely an historical acknowledgment; after noting this history and the subsequent legislation in the area of child abuse laws, Raford held that the parental privilege of corporal punishment is no longer a creature of common law:
To the extent [prior caselaw] relied upon any common law privilege for corporal punishment, that privilege is itself now defined and limited by the current statutory scheme.
828 So.2d at 1019 (quoting with approval State v. McDonald, 785 So.2d 640, 647 (Fla. 2d DCA 2001)).
Raford recognized that the difficult task of "delineating a precise line between permissible corporal punishment and prohibited child abuse" is "principally a legislative function, better left to the Legislature." Id. at 1020-21. The Legislature has made that delineation by enacting a variety of laws relating to child abuse and the permissible use of corporal punishment. With regard to school officials, the Legislature in 2002 created section 1003.32, Florida Statutes (2006),[2] which authorizes and circumscribes the use of corporal punishment *371 as a form of student discipline. It provides in pertinent part:

Subject to law and to the rules of the district school board, each teacher or other member of the staff of any school shall have such authority for the control and discipline of students as may be assigned to him or her by the principal or the principal's designated representative and shall keep good order in the classroom and in other places in which he or she is assigned to be in charge of students.
(1) In accordance with this section and within the framework of the district school board's code of student conduct, teachers and other instructional personnel shall have the authority to undertake any of the following actions in managing student behavior and ensuring the safety of all students in their classes and school and their opportunity to learn in an orderly and disciplined classroom:
* * *
(k) Use corporal punishment according to school board policy. . . . [3]
(Emphasis added).
By the plain language of the statute, the Legislature has granted individual school districts the authority to limit the manner and circumstances by which a teacher may impose corporal punishment.
Consistent with this statutory scheme, and pursuant to Raford, a defendant charged with child abuse under 827.03(1) may raise as an affirmative defense the parental privilege of corporal punishment by establishing that:
1. defendant is the parent of the child or one who stands in loco parentis;

2. defendant's actions constitute corporal punishment; and
3. the corporal punishment utilized was "reasonable" or "nonexcessive."
Although Defendant, as a school teacher, satisfies the first element of the defense, she cannot establish that her actions constitute corporal punishment, reasonable or otherwise. The parties in this case stipulated that the Broward County School Board expressly prohibits teachers from using any form of corporal punishment. Thus, when reading section 1003.32 in conjunction with school board policy, as expressly contemplated by the statute, Defendant is foreclosed from relying upon the affirmative defense of parental privilege, because her actions cannot legally constitute corporal punishment (the second element of the affirmative defense). Stated another way, because Defendant was prohibited from imposing any form of corporal punishment, her conduct in this case, as a matter of law, cannot be considered reasonable or nonexcessive corporal punishment (the third element of the affirmative defense).
By contrast, in King v. State, 903 So.2d 954 (Fla. 2d DCA 2005), a private school administrator was charged with felony child abuse for paddling an eight-year old student as punishment for cheating and lying. The student suffered significant welts and bruises, but did not require medical treatment. The school expressly approved the use of paddling as corporal punishment and the parents of each student signed a form consenting to the use of paddling as a disciplinary measure on their child. The second district held that, in the context of a teacher imposing authorized *372 corporal punishment, "spankings that result in `significant bruises or welts' do not rise to the level of felony child abuse, which requires `more serious beatings that do not result in permanent disability of permanent disfigurement.'" Id. at 955 (quoting State v. McDonald, 785 So.2d 640, 646 (Fla. 2d DCA 2001)).
King is necessarily limited to those situations in which a defendant can validly assert the affirmative defense of parental privilege to impose corporal punishment. King's conduct did not rise to the level of child abuse because the defendant stood in loco parentis, the punishment imposed was expressly authorized by the school and the parents, and the punishment was, as determined by the district court, "reasonable" corporal punishment. Unlike the defendant in King, the Defendant in this case was prohibited from imposing any corporal punishment. In the absence of a corporal punishment privilege, Defendant's actions must be assessed in the same manner as those of any other non-parental (or non-in loco parentis) defendant. Czapla v. State, 957 So.2d 676 (Fla. 1st DCA 2007). That is, Defendant's conduct is to be measured not in terms of whether her actions were "reasonable" (as the majority asserts) but whether those actions "could reasonably be expected to result in physical or mental injury to a child." § 827.03(1)(b), Fla. Stat. I cannot agree with the majority's conclusion that Defendant's actions, as a matter of law, could not reasonably be expected to result in injury. Defendant's actions present a question of fact that should be resolved by the trier of fact. See, e.g., Fieldhouse v. Tam Inv. Co., 959 So.2d 1214 (Fla. 4th DCA 2007) (in civil context, whether an injury is a reasonably foreseeable consequence of defendant's conduct is ordinarily an issue for trier of fact, precluding summary judgment). I believe that the state has established a prima facie case of guilt as to the child abuse counts, and a jury should be permitted to determine whether the state can establish guilt beyond a reasonable doubt.
NOTES
[1] The same allegations form the basis for Counts II and III, and the alleged victim in both counts is S.C.
[2] This legislation became effective January 7, 2003 after the date of the decision in Raford. See Ch. 2002-387, Laws of Fla.
[3] The remainder of section 1003.32(1) contains certain minimum guidelines which must be followed before a school official may utilize corporal punishment in disciplining a student, including a requirement that "[a] teacher or principal may administer corporal punishment only in the presence of another adult who is informed beforehand, and in the student's presence, of the reason for the punishment."