IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BRENDA L MORRIS,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellant,

v.

CASE NO. 1D17-552

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed October 6, 2017.

An appeal from the Circuit Court for Escambia County.
Thomas V. Dannheisser, Judge.

Andy Thomas, Public Defender, Lori A. Willner, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Holly N. Simcox, Assistant Attorney General, and Sharon S. Traxler, Assistant Attorney General, Tallahassee, for Appellee.

OSTERHAUS, J.

      Teacher's aide Brenda L. Morris appeals her misdemeanor battery conviction arising from the discipline of a combative young student outside a pre-kindergarten classroom in Pensacola. We reverse because the jury acquitted Ms. Morris of child

abuse, and it wasn't otherwise a crime for Ms. Morris to have non-abusively touched the student during this incident.

## I.

In March 2016, an ESE teacher at Lincoln Park Elementary School could not get a combative four-year-old student to stop acting out. The student stood on top of a table inside the classroom, kicked, spat, threw blows, and called the teacher the "B word." The teacher asked Ms. Morris for help. Ms. Morris was a 68-year-old teacher's aide who'd been at the school for a couple years and had a history of working with troubled youth. She responded to the teacher's request for help by escorting the young student out of the classroom into the hallway to talk to him and calm him down. *See* § 1003.32(1)(c), Fla. Stat. (authorizing school staff to remove "violent, abusive, uncontrollable, or disruptive students" from the classroom for behavior management intervention). After a minute in the hallway, the student proceeded to spit and kick at Ms. Morris, who reacted by slapping her hand down toward his face and catching his leg, causing him to fall down. According to Ms. Morris, any contact with the student was to block him from spitting on her and to block his kick. After the student's fall, he and Ms. Morris remained in the hallway for another minute before going back into the classroom. There was no evidence of any injury to the student.

Meanwhile, another teacher's aide at the school passed by during the incident

and peered from around a corner to see what was going on. From her vantage point behind Ms. Morris's back, she testified to seeing Ms. Morris "slap" the student's face and pull his leg. She reported the incident to a school guidance counselor and to the principal. She also wrote up an incident statement and called the Florida Department of Children and Families to report it. By the time the principal responded to the scene, Ms. Morris and the student were back in the classroom, with the student working at a computer and "happy."

The State proceeded to press two child abuse charges against Ms. Morris based on the alleged slap and leg-grab in the hallway. The case went to trial where the court included lesser-included battery offenses for both child abuse counts and the State argued that Ms. Morris committed "an intentional touching that went against the will of the child [at] a very minimum." Ms. Morris moved for a judgment of acquittal during the trial (and post-verdict) on the basis that she was acting in the role of a teacher and couldn't be convicted of child abuse or battery under these circumstances. The trial court first reserved ruling upon her JOA motion, but ultimately denied it.[1] The jury returned a verdict rejecting the two child abuse counts

---

[1] In the course of ruling on the motions, the trial court reviewed a choppy hall video of the incident and considered the JOA motion a close call due to the nature of the alleged "slap":

> [F]rom what I could see, I mean, there wasn't a slap in the conventional sense. When I read the arrest report, I assumed it was going to be a conventional slap. But from the video . . . there was an upward hand.

3

charged by the State, but convicting Ms. Morris of one count of lesser-included simple battery for intentionally touching or striking the student against his will on the face. Ms. Morris ultimately appealed her misdemeanor battery conviction.

## II.

"A trial court's denial of a motion for judgment of acquittal is reviewed de novo." *Perez v. State*, 187 So. 3d 1279, 1281 (Fla. 1st DCA 2016). In this case, we agree with Ms. Morris that her conviction must be reversed. The jury acquitted Ms. Morris of both of the charged child abuse offenses, rejecting the State's argument that she struck the student in the face or grabbed his leg in a manner "that could reasonably be expected to result in a physical or mental injury to a child." *See* § 827.03(1)(b)(2), Fla. Stat. And having committed no act of child abuse, Ms. Morris's conviction cannot stand simply on the basis of the jury's decision that she

> Ms. Morris' hand goes down. It could have struck the top of his head. You can't really tell from the video. His head doesn't like, physically react, like from a strong downward force. . . . So assuming that the hand slapped, tapped, whatever the head [it was] a force insufficient to cause the head to jerk or move around.

The court also struggled with the completeness of the eyewitness's description of the alleged slap:

> [W]e have the testimony of the teacher or teacher's aide who said [the student] was slapped. She didn't go into any details, kind of conclusory. So it didn't really with specificity, describe the slap. So the evidence is not extremely strong . . . ."

4

intentionally touched the student against his will. *See* § 784.03, Fla. Stat. (defining simple battery as when a person "actually and intentionally touches or strikes another person against the will of the other; or [i]ntentionally causes bodily harm").

Teaching personnel stand *in loco parentis,* "in the place of a parent," with respect to students in their classrooms who they must supervise and control. *State v. Lanier*, 979 So. 2d 365, 369 (Fla. 4th DCA 2008) (citing *State v. D.T.W.*, 425 So. 2d 1383, 1386 (Fla. 1st DCA 1983)). They owe "a general duty of supervision to the students placed within [their] care . . . based on the school employee standing partially in place of the student's parents . . . [and are responsible] to protect children during school activity." *Rupp v. Bryant,* 417 So. 2d 658, 666 (Fla. 1982). This parent-like role encompasses authority to discipline children who display combative behavior of the sort that occurred in this case.

Parents in Florida may discipline their children using reasonable physical punishments. *G.C. v. R.S.*, 71 So. 3d 164, 166 (Fla. 1st DCA 2011) (citing *Raford v. State,* 828 So.2d 1012, 1015, n. 5 (Fla. 2002)) (finding a spanking to constitute "reasonable parental discipline"); *A.A. v. Dep't of Children & Families,* 908 So.2d 585, 587 (Fla. 5th DCA 2005) (recognizing that parents may administer corporal discipline); *Kama v. State*, 507 So. 2d 154, 156 (Fla. 1st DCA 1987) ("Although a person who spanks a child technically commits a battery . . . a parent, or one acting *in loco parentis*, does not commit a crime by inflicting corporal punishment on a

5

child subject to his authority, if he remains within the legal limits of the exercise of that authority.") (partly superseded by statute on other grounds, as acknowledged in *Raford v. State*, 828 So. 2d 1012, 1020 (Fla. 2002)). *See also* § 39.01(2), Fla. Stat. (drawing a distinction between non-abusive corporal discipline and child abuse); § 984.03(2), Fla. Stat. (same). Just as parents are privileged to administer corporal discipline to their children and touch them non-abusively against their will, "the law permits, by privilege, a simple battery in the administration of discipline by [other persons with] authority over a child." *Kama*, 507 So. 2d at 158. This parental corporal discipline privilege extends specifically to teachers and school personnel acting *in loco parentis*, negating their potential liability for committing simple battery. *See Lanier*, 979 So. 2d at 368 (affirming the dismissal of charges against a teacher who stomped on a four-year-old's foot in response to that student's having stomped on another child's foot); *King v. State*, 903 So. 2d 954 (Fla. 2d DCA 2005) (reversing a conviction where a child received a school-administered spanking with a wooden paddle that left welts and bruises). *See also* § 1003.32(1)(k), Fla. Stat. (authorizing schools to administer corporal discipline).

The legal privilege of teachers to chastise students under their care controls the outcome in this case. Here, even if Ms. Morris's actions in the hallway did not stem from defending herself against being struck with the student's spittle and kick, they were privileged acts. She had supervisory responsibility for the student's care

6

and discipline at the time of the incident and was acting in the place of the child's parent. In other words, she had "the right 'to moderately chastise for correction [the] child under . . . her control and authority,'" which included touching him in the non-abusive manner that she did. *Lanier*, 979 So. 2d at 369 (quoting *Raford*, 828 So. 2d at 1015 n.5). Under these circumstances, Ms. Morris's motion for judgment of acquittal should have been granted.[2]

Finally, we reject the State's contention that Ms. Morris's judgment of acquittal motions failed to sufficiently preserve the parental privilege argument for appeal. In JOA motions asserted after the State rested its case and post-trial, Ms. Morris argued for acquittal based upon her role as a teacher and cited the same *Lanier* and *King* cases that we rely upon here. Moreover, the record doesn't support the State's argument that Ms. Morris waived the right to assert a parental discipline privilege by requesting inclusion of the lesser-included battery offenses herself. *See Nixon v. State*, 773 So. 2d 1213, 1215 (Fla. 1st DCA 2000). Nor did Ms. Morris affirmatively rely on the inclusion of the lesser-included offenses as a trial strategy, or encourage the use of the jury's pardon power via the lesser-included offenses. *See*

---

[2] This opinion does not speak to whether Ms. Morris's actions violated the state's education code, school board policies, or some other school standard. Those are separate issues that do not bear directly upon whether she was rightfully convicted for violating Florida's *criminal* law. *See Lanier*, 979 So. 2d at 368-69 (warning against conflating Florida's criminal code with education code-related discipline polices).

*State v. Espinosa*, 686 So. 2d 1345, 1348-49 (Fla. 1996).

## III.

For these reasons, Ms. Morris's battery conviction is REVERSED and REMANDED with directions to enter a judgment of acquittal.

ROBERTS and M.K. THOMAS, JJ., CONCUR.