NORTHCUTT, Judge.
One evening in May 2008, Tracy Burke became intoxicated and started a domestic altercation that resulted in charges that he committed misdemeanor battery of his wife and child abuse of his son. A jury convicted him of both crimes. Burke does not dispute his conviction for battery. But he contends that the evidence was insufficient to prove he committed the crime of child abuse. We agree.
In the State’s case at trial, Burke’s wife testified that on the evening in question her husband was intoxicated to the point that he could hardly walk. He became belligerent and verbally abusive. As the tension escalated, she decided that she and the couple’s two children should stay at a neighbor’s for the night. She told the children to pack their overnight bags. This touched off a fracas in which Burke began yelling at his nine-year-old son, declaring that he, not the children’s mother, made the rules in the house. He ordered the boy to stop packing his clothes and to go to bed. Burke’s wife hurried to the bedroom, where she found Burke holding their son by his arms and shaking him as he was trying to make the boy drop his belongings. She separated the two and told Burke he was scaring the boy and that she and the children were leaving. Burke grabbed his wife and slammed her into the dining room table. Finally, the children and their mother escaped to a neighbor’s home. Both the mother and the neighbor related that the children were very scared.
The son testified about his father’s behavior in the bedroom. The boy said his father had his hand on his hair. Burke restrained him by wrapping his arm around him and pressing his back against Burke’s knee. When the boy’s mother came in, Burke grabbed his arm and began shaking him. When asked at trial whether he’d suffered any injuries that night, the son testified “My hair. That’s about it.” He did not have any bruises, but the neighbor testified he was rubbing his arm “like it had been twisted.”
The police officer who responded to the 911 call described injuries he saw on Burke’s wife, but he said nothing about any observable injuries on Burke’s son. No medical personnel testified at trial nor did any of the witnesses indicate that the boy was taken to a hospital or a doctor’s office for examination or treatment. There was no evidence that Burke had previously injured the child.
Burke was charged under section 827.03(1), Florida Statutes (2007), which makes it a third-degree felony for anyone to “knowingly or willfully abuse a child without causing great bodily harm, permanent disability or permanent disfigurement to the child.” Relevant to these facts, the *945 statute describes child abuse as the “[i]n-tentional infliction of physical or mental injury upon a child;” or “[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child.” § 827.03(l)(a), (b).
Many of the terms used in chapter 827 are not defined. Courts have, however, looked to chapter 39, a comprehensive chapter addressing proceedings related to children, to flesh out the meaning of terms used in section 827.03(1). See DuFresne v. State, 826 So.2d 272, 277-78 (Fla.2002); State v. McDonald, 785 So.2d 640, 646 (Fla. 2d DCA 2001). “Abuse,” as defined in section 39.01(2), Florida Statutes (2007), includes “any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired.” Harm occurs when a person inflicts “physical, mental, or emotional injury.” § 39.01(31)(a). Thus, when we analyze whether the State has proved that a child was injured for purposes of a criminal conviction under section 827.03(1), we can be guided by the definition of “harm” in section 39.01(31). See McDonald, 785 So.2d at 646; see also Czapla v. State, 957 So.2d 676, 679 (Fla. 1st DCA 2007) (reading the definition of “harm” in chapter 39 in pari materia with the definition of child abuse in section 827.03(1)). Subsection 39.01(31)(a) suggests that the following facts be considered: “the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted.” Injury includes, but is not limited to, willful acts that result in, for example, “[sjprains, dislocations, or cartilage damage.” § 39.01(31)(a)(l)(a).
Considering the concepts in Chapter 39 in pari materia with section 827.03, it is apparent that for purposes of a criminal prosecution under the latter statute, a “physical injury” requires something more than mild or passing discomfort. Burke’s acts of twisting the boy’s arm, pressing him against his knee and holding him by the hair did not result in an injury or “harm” as described in section 39.01(31). While the laundry list of injuries that could cause harm contained in section 39.01(31)(a)(l) is not exclusive, it includes sprains, fractures, burns, and punctures.[1] Here, the boy claimed only that his hair was injured, but he did not explain what that injury might be. None of the other witnesses mentioned his hair, and no one stated that his arm was even bruised. The State’s evidence was sufficient to prove an intentional act on Burke’s part, but that act did not result in a physical injury. See §§ 39.01(31); 827.03(1).
The same is true of the “mental injury” component of section 827.03(1). Mental injury to a child is defined in chapter 39 as “an injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability to function within the normal range of performance and behavior.” § 39.01(41); see also DuFresne, 826 So.2d at 278-79 (explaining that the definition of mental injury in chapter 39 puts a citizen on notice of what could constitute “mental injury to a child” under *946 section 827.03(1)). Understandably, the boy was shaken-up and frightened by his father’s behavior that evening. But the State presented no evidence that the incident resulted in an impairment of the boy’s ability to function within the normal range of performance and behavior. See Baker v. State, 980 So.2d 616, 618 (Fla. 4th DCA 2008) (discussing the proof required to sustain a conviction for child abuse based on intentional infliction of a mental injury under section 827.03(1)).
We reverse Burke’s conviction for child abuse and remand with directions to discharge him for that crime.
KHOUZAM, J., Concurs.
ALTENBERND, J., Concurs with opinion.

. We recognize that some of the injuries described in section 39.01(3 l)(a)(l), like brain damage or drowning, would cause "great bodily harm, permanent disability, or permanent disfigurement to the child” and thus would be pertinent to a charge of aggravated child abuse under section 827.03(2), rather than the charge of felony child abuse at issue here. We limit our discussion of injuries described in that subsection to ones that would not, perforce, cause the aforementioned harm, disability, or disfigurement.